IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 09-168 |
| | ) | |
| RAYMOND ZARECK, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

CONTI, District Judge.

Pending before the court is a motion for reconsideration for a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978), (ECF No. 174), filed by Raymond Zareck ("defendant" or "Zareck") in the above-captioned case. On April 13, 2009, the United States government ("government") filed a criminal complaint charging defendant with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g). (ECF No. 1.) On May 13, 2009, a federal grand jury in the Western District of Pennsylvania returned a one-count indictment charging defendant with that offense. (ECF No. 5.) On November 25, 2009, defendant filed a motion to suppress in which he made three arguments for suppression of evidence: 1) the search of his vehicle was conducted without a warrant, probable cause, or exigent circumstance, thereby violating his constitutional rights under the Fourth Amendment to the Constitution of the United States; 2) he made statements while in police custody relating to the purchase or assembly of firework or improvised explosive devices without first being read his Miranda warnings, which violated his constitutional rights under the Fifth Amendment to the Constitution of the United States; and 3) the search of his residence was premised on a fatally flawed affidavit of probable

cause, thereby violating his constitutional rights under the Fourth Amendment to the Constitution of the United States.

On December 15, 2009, the government filed a response to the motion to suppress. (ECF No. 52.) On May 27, 2010, the court held an evidentiary hearing on the motion during which witnesses testified and exhibits were entered into evidence. On June 29, 2010, the court continued the evidentiary hearing. On July 21-22, 2010, the court held a hearing to determine if defendant was entitled to a <u>Franks</u> hearing to challenge the truthfulness of factual statements made in the affidavit of probable cause supporting the warrant issued to search his residence and determined a <u>Franks</u> hearing was not warranted. On December 3, 2010, after the government and defendant filed proposed findings of fact and conclusions of law, (ECF. Nos. 105, 106), the court denied defendant's motion to suppress. (ECF No. 108.)

On June 14, 2012, defendant, who had retained new counsel, filed a motion for reconsideration of a <u>Franks</u> hearing. (ECF No. 174.) In this motion, defendant argued that at the July 21-22, 2010 hearing concerning the motion for a <u>Franks</u> hearing, the court lacked sufficient information in the form of an expert's affidavit to challenge the bomb squad's advice to Officer Wintruba, which Officer Wintruba relied upon and used to obtain the search warrant at issue. <u>Id.</u> at 5, ¶ 9. Defendant avers that the expert affidavit of Dr. Frederic W. Whitehurst, J.D., Ph.D. ("Dr. Whitehurst") is sufficient to show that Officer Wintruba should not have believed the bomb squad technicians' assessment of the device found in defendant's vehicle because the bomb squad's investigation of that device was incomplete. (ECF No. 174, Ex. D.) On June 28, 2012, the government filed a response to defendant's motion arguing defendant failed to meet the standards for a motion for reconsideration and a <u>Frank's</u> hearing, and thus, defendant's motion for reconsideration should be denied.

## I. Background

This opinion incorporates the findings of fact as set forth in the Memorandum Opinion and Order in this case, dated December 3, 2010. (ECF No. 108, United States v. Zareck, No. 09-168, 2010 WL 5053916 (W.D.Pa. 2010)). Defendant's motion for reconsideration specifically concerns Officer Wintruba's reliance on the information provided to him by the bomb squad, which Office Wintruba used in his affidavit of probable cause to obtain a search warrant for Zareck's residence. (ECF No. 174.) Officer Wintruba's affidavit of probable cause provides in relevant part:

> Allegheny County Bomb Squad arrived on scene & took possession of the device. The device was transported to a vacant area on the Waterfront & detonated. Bomb Technicians Robert Synan & Mark Divelbiss advised officers that the device was infact [sic] an improvised explosive device. They went on to state that the flash powder Zareck is using in these types of devices is extremely volitile [sic] & dangerous. In addition, depending on how much flash powder is located with in [sic] Zareck's residence this could prove to be a dangerous and hazardous condition for the surrounding neighbors & the public. The technicians Synan & Divelbiss stated that they have had prior experience with bomb makers of this type. They stated that these bomb makers do not make just one improvised explosive device, but infact [sic] make several at a [sic] one time.

(ECF No. 37, Ex. A.)

Defendant points to the opinions of Dr. Whitehurst to support his request for the pending motion for reconsideration of a Franks hearing. Dr. Whitehurst opined that the bomb squad's investigation of the device found in defendant's car was incomplete. (ECF No. 174, Ex. D.) Dr. Whitehurst holds a juris doctorate degree and bachelor of science and doctorate of philosophy degrees in chemistry. (ECF No. 174, Exs. D, E). He previously worked for the Federal Bureau of Investigation, where his expertise was in the chemical analysis of materials from bombing crime

scenes. As of the date of his affidavit, May 13, 2012, Dr. Whitehurst practices law in North Carolina and serves as a forensic consultant testifying in state and federal courts. Id.

In his expert affidavit, Dr. Whitehurst did not find fault with the render safe procedures followed by the bomb squad technician, Officer Robert Synan ("Officer Synan"), when he first arrived on the scene, x-rayed the device believed to be an improvised explosive device ("IED"), removed it to a safe location, and destroyed it utilizing sheet explosives. Id. at 1, ¶¶ 4-5. Dr. Whitehurst opined that Officer Synan's assumption that the device contained energetic material was appropriate and evidenced his proper training in handling crime scenes of this nature. Id. at 1, ¶ 5. Dr. Whitehurst, however, disagreed with the bomb squad's handling of the device *after* it was placed in a crater in the ground and exploded to render it safe. Id. at 1-4, ¶¶ 6-8.

Dr. Whitehurst found that the bomb squad's investigation was incomplete because the bomb squad failed to retrieve the contents of the device left in the crater after the explosion. Id. at 1-3, ¶¶ 6-7. Dr. Whitehurst opined that the bomb squad should have retrieved the contents of the crater to conduct a forensic residue analysis to determine whether there were chemicals in the residue which would be present if an explosive was actually in the device. Id. at 1-2, ¶ 6. Dr. Whitehurst explained that the use of an x-ray was an insufficient method to use to determine the chemical make-up of the device. Id. at 2-3, ¶ 7. Instead, in order to conclude whether or not the device was an IED, the bomb squad needed to conduct a chemical analysis of its contents to determine four factors: (1) the kinds of atoms present in the device; (2) which, if any, atoms were attached to each other; (3) what proportion those chemicals were to each other; and (4) the form in which the chemicals were present. Id. at 3, ¶ 7. Dr. Whitehurst opined that the failure to retrieve the contents of the device was in violation of accepted protocol found in the U.S. Department of Justice's Guide for Explosion and Bombing Scene Investigation. Id. at 2, ¶ 6. Dr.

Whitehurst opined that the bomb squad's failure to collect and analyze the data from the crater after the device's destruction left the bomb squad with inadequate information to conclude that the device found in defendant's vehicle was an IED, "hot," "volatile," or dangerous. Id. at 3-4, ¶¶ 7-8. It was those conclusions that Officer Wintruba relied upon to obtain a search warrant of defendant's residence. See (ECF No. 37, Ex. A.) Notably, however, Dr. Whitehurst's expert affidavit did not contain any opinion regarding Officer Wintruba's state of mind and whether he had reason to doubt the adequacy of the bomb squad's investigation or the bomb squad's conclusions, which he included in his affidavit for probable cause. See (ECF No. 174, Ex. D.)

Defendant relies on Dr. Whitehurst's opinions to support his motion for reconsideration of a Frank's hearing. The court will now address the merits of this motion.

## II. Legal Standard

"Motions for reconsideration may be filed in criminal cases." U.S. v. Fiorelli, 337 F.3d 282, 286 (3d Cir. 2003). A trial judge exercises broad discretion over motions to reconsider, especially as they pertain to interlocutory orders. The Court of Appeals for the Third Circuit has noted, "'[s]o long as [a] district court has jurisdiction over the case, it possesses inherent power over interlocutory orders, and can reconsider them when it is consonant with justice to do so.'" In re Anthanassious, 418 F. App'x 91 (3d Cir. 2011) (quoting United States v. Jerry, 487 F.2d 600, 605 (3d Cir. 1973)). A trial judge "'should exercise that discretion whenever it appears that a previous ruling, even if ambiguous, might lead to an unjust result.'" In re Pharmacy Benefit Managers Antitrust Litig., 582 F.3d 432, 438-39 (3d Cir. 2009) (quoting Swietlowich v. Bucks Cnty., 610 F.2d 1157, 1164 (3d Cir. 1979)).

The purpose of a motion to reconsider is "'to correct manifest errors of law or fact or to present newly discovered evidence." Bootay v. KBR, Inc., 437 F. App'x 140, 146 (3d Cir. 2011)

(quoting <u>Harsco Corp. v. Zlotnicki</u>, 779 F.2d 906, 909 (3d Cir. 1985)). There are three circumstances in which a court may grant a motion for reconsideration: (1) there has been an intervening change in the controlling law; (2) new evidence is now available that was not available when the court entered judgment; (3) there is a need to correct a clear error of law or fact or to prevent manifest injustice. <u>Max's Seafood Cafe v. Quinteros</u>, 176 F.3d 669, 667 (3d Cir. 1999) (quoted by <u>U.S. v. Trenk</u>, 2009 WL 1298420, *2 (D.N.J. 20049)). In applying this standard, if a "'trial judge decides to change or explain an earlier ruling, he should state his reasons on the record.'" <u>In re Pharmacy Benefit</u>, 582 F.3d at 438-39 (quoting <u>Swietlowich</u>, 610 F.2d at 1164). It follows, that although a motion for reconsideration may be granted, it is within the court's discretion to *not* alter or change its previous ruling.

### III. <u>Franks</u> Hearing

In <u>Franks</u>, the Supreme Court held that a defendant may challenge the presumed validity of an affidavit of probable cause used to secure a search warrant by attacking the truthfulness of the factual statements made in the affidavit. <u>Franks</u>, 438 U.S. at 155-56. When appropriate, the court will hold a <u>Franks</u> hearing to give the defendant an opportunity to present evidence which challenges the truthfulness of the affidavit. <u>United States v. Yusuf</u>, 461 F.3d 374, 383 (3d Cir. 2006). In order to obtain a <u>Franks</u> hearing, defendant must first make a "substantial preliminary showing" that (a) the affidavit contained a false statement, which was made knowingly or with reckless disregard for the truth and (b) is material to the finding of probable cause. <u>Id.</u> To make a substantial preliminary showing, "the defendant cannot rest on mere conclusory allegations or a 'mere desire to cross-examine,' but rather must present an offer of proof contradicting the affidavit, including materials such as sworn affidavits or otherwise reliable statements from witnesses." <u>Id.</u> at 383 n.8.

If the defendant meets this burden and a hearing is granted, the defendant must prove by a preponderance of the evidence that: (a) the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (b) such statements or omissions were material, or necessary, to the probable cause determination. Id. at 383. Under the Franks standard, to prove the affiant acted with a reckless disregard for the truth, the defendant must show "'the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.'" United States v. Brown, 631 F.3d 638, 645 (3d Cir. 2011) (quoting Wilson v. Russo, 212 F.3d 781, 788 (3d Cir. 2000)). To determine whether the deficiencies in the affidavit are "material" to the determination of probable cause, the court must follow the following procedure:

> When faced with an affirmative misrepresentation, the court is required to excise the false statement from the affidavit. In contrast, when faced with an omission, the court must remove the "falsehood created by an omission by supplying the omitted information to the original affidavit."

Id. at 384 (quoting Sherwood, 113 F.3d at 400). If probable cause still exists after the affidavit has been "corrected," then the deficiencies are not material. Id.

The determination the court now must make is whether accepting as accurate Dr. Whitehurst's opinions for purposes of this matter, those opinions are sufficient for defendant to make the substantial showing required by Franks.

In his motion for reconsideration, defendant argues that the information the bomb squad supplied to Officer Wintruba concerning the make-up and dangerousness of the device found in defendant's car was unreliable. (ECF No. 174, p. 6, ¶ 11). Defendant asserts that Dr. Whitehurst's expert affidavit, which was not presented at the July 21-22, 2010 hearing, contains

evidence necessary to understand why Officer Wintruba should not have believed this information in obtaining a search warrant for defendant's residence. Id. Defendant does not argue that there is new controlling case law or that manifest injustice will result if the motion is denied. Since the expert affidavit is evidence that was not previously presented in this case, the only basis for reconsideration is whether this affidavit is "new evidence."

The Court of Appeals for the Third Circuit recognized: "'New evidence [for a motion for reconsideration] does not refer to evidence that a party obtains or submits to the court after an adverse ruling. Rather, new evidence in this context means evidence that a party could not earlier submit to the court because the evidence was not previously available." Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc., 602 F.3d 237, 252 (3d Cir. 2010). In light of the liberty interests at stake in this case and the broad discretion afforded to trial courts to reconsider their interlocutory decisions,[1] the court will assume the affidavit of Dr. Whitehurst is new evidence and will grant the motion to reconsider. The court will now consider Dr. Whitehurst's opinions to determine whether a Franks hearing should be held. In essence, the court will reconsider its prior order denying the motion for a Franks hearing.

Under Franks, the defendant must first make a substantial showing that the affidavit of probable cause contained a false statement. Yusuf, 461 F.3d at 383. With the addition of Dr. Whitehurst's opinions, the court finds that defendant could satisfy this burden. Defendant presented the court with an expert affidavit that calls into question the bomb squad's investigation of the device found in defendant's vehicle. (ECF No. 174, Ex. D.) According to Dr.

---

[1] In United States v. Marshall, 471 F. Supp. 2d 479, 483 (D. Del. 2007), defendant failed to meet the preliminary substantial showing required by Franks. The court, however, permitted defendant to provide additional evidence to the court "to provide the quality of evidence consistent with Yusuf" and to resolve various discrepancies surrounding the search warrant and affidavit of probable cause in the case. Id. This court takes a similar approach in the present case considering Dr. Whitehurst's opinions to determine whether a Franks hearing should be held.

Whitehurst, a forensic consultant with expertise in the chemical analysis of materials from bombing crime scenes, the bomb squad failed to take the necessary steps to determine the chemical make-up of the device at issue. Id. As a result, according to Dr. Whitehurst, the bomb squad was unable to determine whether the device was an IED, if it contained flash powder, and whether it was volatile or dangerous. Id. at 1-3, ¶ 6-7. These are the conclusions made by the bomb squad that Officer Wintruba included in his affidavit of probable cause. See (ECF No. 37, Ex. A.)

Dr. Whitehurst opines on the type of information the bomb squad needed, but did not have, to conduct a full investigation of the device. (ECF No. 174, Ex. D., 2-3, ¶ 7.) The government's response to defendant's motion for reconsideration does not address the specifics of the bomb squad's investigation and does not provide further insight into the information they did or did not have after they detonated the device. See (ECF No. 180.) As a result, the court will assume defendant could make a preliminary substantial showing that false statements (the device was an IED, it contained flash powder, it was volatile and dangerous) were contained in Officer Wintruba's affidavit of probable cause. Notably, defendant did not call into question the truthfulness of Officer Wintruba's statements that the bomb squad told him the device was an IED, contained flash powder, and was volatile and dangerous.

The next part of the Franks analysis requires the court to determine whether defendant made a substantial showing that those false statements in the affidavit of probable cause were made knowingly, deliberately, or with a reckless disregard for the truth. Yusuf, 461 F.3d at 383. Defendant made no showing that any statements made by Officer Wintruba concerning the bomb squad's statements to him were knowingly or deliberately false. Defendant merely states that Officer Wintruba should not have believed the statements. The court will need to address

whether those statements in the affidavit of probable cause were made with a reckless disregard for the truth. See (ECF No. 174, ¶ 11.)

For a court to decide that an officer's affidavit of probable cause was made with "reckless disregard" of the truth, "'the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.'" Brown, 631 F.3d at 645 (quoting Wilson, 212 F.3d at 788). Unless defendant presented evidence that Officer Wintruba should have had serious doubts about the bomb squad's information or had obvious reasons to doubt such information, defendant cannot establish that Officer Wintruba's statements were made with reckless disregard for the truth and request for a Frank's hearing must be denied. Defendant failed to present any affidavit or statement of a reliable witness which would call into question Officer Wintruba's reliance on the information given to him by the bomb squad. Attacking the credibility of the bomb squad's investigation without setting forth reasons why Officer Wintruba should have entertained doubt pertaining to that investigation is not enough. The court must conclude that defendant did not make a preliminary substantial showing that Officer Wintruba acted in deliberate or reckless disregard of the truth.

The Court of Appeals for the Third Circuit has held that "information received from other law enforcement officials during the course of an investigation is generally presumed to be reliable . . . [and] government agents should generally be able to presume that information received from a sister governmental agency is accurate." Yusuf, 461 F.3d at 378, 385. Under Yusuf, the information given to Officer Wintruba from the bomb squad, a government agency, was presumably reliable, and defendant presented no affidavit or statement of a reliable witness to show Officer Wintruba had or should have had reason to doubt what the bomb squad told him. The evidence the court *does* have is that Officer Wintruba had no military, ordinance or

explosive training, and the Homestead Police Department does not have its own bomb squad. (Hr'g Tr. 12, May 27, 2010.) There was no information presented to the court to show that Officer Wintruba had any reason to doubt the information he received from a sister government agency.

In <u>Yusuf</u>,[2] the court of appeals determined that an FBI agent did not act in reckless disregard of the truth when he relied upon erroneous information supplied by the Virgin Islands Bureau of Internal Revenue ("VIBIR") in an affidavit of probable cause. <u>Yusuf</u>, 461 F.3d at 378. The court of appeals made this determination based on the information presented to the district court at a <u>Franks</u> hearing and despite the FBI having done its own investigation which yielded results that conflicted with those of the VIBIR. <u>Id.</u> at 381. The court set forth a two-part inquiry for courts to apply to make the determination whether a government agent was reckless in relying upon information supplied by a sister government agency. <u>Id.</u> at 378. The test is as follows:

> To demonstrate that a government official acted recklessly in relying upon such information, a defendant must first show that the information would have put a reasonable official on notice that

---

[2] The Court of Appeals for the Third Circuit reaffirmed the <u>Yusuf</u> two-part test in <u>United States v. Humbert</u>, 336 F. App'x 132, 136 (3d Cir. 2009). In <u>Humbert</u>, an FBI agent relied on information supplied by the National Crime Information Center ("NCIC"), which erroneously listed the defendant as a convicted sex offender and Megan's Law registrant in an affidavit of probable cause. <u>Id.</u> Relying on <u>Yusuf</u>, the court found "government agents should generally be able to presume that information received from a sister governmental agency is accurate." <u>Humbert</u>, 336 F. App'x at 137 (quoting <u>Yusuf</u>, 461 F.3d at 378). The court found that the FBI agent did not act in reckless disregard of the truth by relying on the NCIC information because the defendant failed to show that the FBI agent "should have been on notice that further investigation was required." <u>Id.</u> at 137. Because the defendant failed to make a showing that "a reasonable official [would have been] on notice that further investigation was required," the court declined to apply the second part of the test to determine if there was evidence "(1) of a systemic failure on the agency's part to produce accurate information upon request; or (2) that the officer's particular investigation into possibly inaccurate information should have given the officer an obvious reason to doubt the accuracy of the information." <u>Id.</u>

> further investigation was required. If so, a defendant may establish
> that the officer acted recklessly by submitting evidence: (1) of a
> systemic failure on the agency's part to produce accurate
> information upon request; or (2) that the officer's particular
> investigation into possibly inaccurate information should have
> given the officer an obvious reason to doubt the accuracy of the
> information.

<u>Id.</u> Applying this test, the court of appeals held that the discrepancy between the FBI's information and the VIBIR's information would have put a reasonable official on notice that further investigation was required. <u>Id.</u> at 385. Applying the second part of the analysis, however, the court found that (1) the defendant failed to show that the VIBIR had a systematic failure to produce accurate information; and (2) the FBI agent, who was in constant contact with the VIBIR in order to understand the discrepancy, did not have obvious reason to doubt the accuracy of the VIBIR's information. <u>Id.</u> at 386. In making this determination, the court considered that VIBIR submitted its investigation pursuant to court order, and no one in the FBI had reason to doubt the accuracy of the work produced by the VIBIR. <u>Id.</u> The court stressed that the FBI agent's inexperience in working with the VIBIR supported the conclusion that he had no reason to doubt their work. <u>Id.</u>

Applying the principles set forth in <u>Yusuf</u> to the present case, it is clear there is no basis for this court to conclude that Officer Wintruba acted in reckless disregard of the truth by relying upon the information supplied to him from the bomb squad. Officer Wintruba knew that the fire chief described the device as dangerous. (Hr"g Tr. 21, May 27, 2010.) He also knew the bomb squad took control of and x-rayed the device, and detonated it in a "safe open grassy area." <u>Id.</u> at 27, 28, 64. The bomb squad advised Office Wintruba that the device was an IED, contained flash powder, and was extremely hot and volatile, unstable and dangerous. <u>Id.</u> at 27-8. Defendant failed to present any affidavit or statement showing that Officer Wintruba had reason to doubt

the bomb squad's investigation or that as required by <u>Yusuf</u>, that the information would have put a reasonable officer on notice that further investigation was required. Dr. Whitehurst's opinions do not explain why Officer Wintruba should have been aware of obvious reasons to doubt the bomb squad's investigation. <u>See</u> (ECF no. 174.) Based on the foregoing, the court concludes that defendant failed to make a substantial showing that even assuming the statements made by the bomb squad to Officer Wintruba were false, Officer Wintruba's reference to those statements in his affidavit of probable cause were made deliberately or in reckless disregard of the truth. Since defendant failed to satisfy part one of the <u>Franks</u> hearing analysis, the court need not comment on whether defendant made a substantial showing that paragraph two of the affidavit of probable cause is material to the determination of probable cause necessary for the issuance of a search warrant.

**IV. Order**

AND NOW, this 12th day of July, 2012, upon consideration of the record and the parties' submissions, IT IS HEREBY ORDERED that even after granting defendant's motion for reconsideration of a <u>Franks</u> hearing, (ECF No. 174), the request for a <u>Franks</u> hearing is hereby DENIED.

By the court:

<u>/s/ Joy Flowers Conti</u>
Joy Flowers Conti
United States District Judge